UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-cv-60690-MORENO/SELTZER

EVERGREEN MARINE, LTD,

      Plaintiff,

vs.

UNITED STATES OF AMERICA,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on Defendant's Motion to Dismiss [DE 7], and Plaintiff's Motion for Leave to Amend Complaint [DE 19], which were referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636 and the Magistrate Rules of the Local Rules of the United States District Court for the Southern District of Florida.  For the reasons set forth below, it is hereby **RECOMMENDED** that Defendant's Motion to Dismiss be **GRANTED**, and that Plaintiff's Motion for Leave to Amend Complaint be **DENIED**.

I.    BACKGROUND

This is an action against the United States under the Federal Tort Claims Act, 28 U.S.C. § 2671, alleging that the United States Coast Guard negligently failed to properly record or disclose a vessel's mortgage at the United States Coast Guard National Vessel Documentation Center (hereinafter "NVDC").  According to the Complaint, in March 2012, Plaintiff, Evergreen Marine, Ltd. ("Evergreen"), purchased a 60-foot motor yacht from a non-party, OIA, LLC.  Prior to purchasing the vessel, Evergreen contacted the NVDC to

determine if there were a mortgage on the vessel and to obtain the vessel's Abstract of Title.  The NVDC reported that there was not a mortgage on the vessel. Based upon that report, Evergreen purchased the vessel.

In March 2015, the vessel was seized on behalf of M&T Bank.  Following that seizure, Evergreen again contacted the Coast Guard concerning the vessel's title.   On April 29, 2015, Evergreen received a letter from the Coast Guard stating that the NVDC had failed to properly report a preferred mortgage in the amount of $683,212.37. According to the Coast Guard, a preferred mortgage had been recorded with the NVDC in January 2003, but "was inadvertently not scanned into the electronic system which would have superseded the previous Abstract of Title in the vessel file" [DE 1-3].  The Coast Guard stated: "It has now been brought to our attention that the electronic version of our record was incorrect and the preferred mortgage with Provident Bank of Maryland remains outstanding.  Our records have now been corrected to reflect this outstanding preferred mortgage" [DE 1-3].

On November 9, 2015, M&T Bank filed an action to foreclose the preferred mortgage. Thereafter, on March 17, 2017, Plaintiff settled with M&T Bank and paid $275,000 to satisfy the balance of the outstanding preferred mortgage.  On April 27, 2017, Evergreen's attorney sent an administrative claim to the Coast Guard via overnight delivery, which claim was not resolved.  Evergreen then filed this action on March 30, 2018, seeking damages for the Coast Guard's negligence in failing to properly record or disclose the vessel's mortgage.

The Government has moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) on two grounds: (1) Plaintiff has failed to allege facts establishing that it made an

administrative claim within two years of the accrual of its alleged claim, as required by the FTCA, 28 U.S.C. § 2680(h); and (2)  the claim is barred by the doctrine of sovereign immunity because it falls within the misrepresentation exception to the waiver of sovereign immunity in the FTCA, 28 U.S.C. § 2680(h).  Evergreen has responded to the Motion to Dismiss, and it has also filed a Motion for Leave to Amend Complaint [DE 19], which amendment the Government argues should be denied as futile.

For the reasons set forth below, the undersigned concludes that Evergreen's administrative claim was timely presented, but that the action is barred by the FTCA's misrepresentation exception.  The undersigned, therefore, recommends that Defendant's Motion to Dismiss [DE 7] be granted.  Furthermore, the undersigned concludes that the amendment of Plaintiff's Complaint would be futile and, accordingly, recommends that Plaintiff's Motion for Leave to Amend [DE 19] be denied.

II.     DEFENDANT'S MOTION TO DISMISS

A.     12(b)(6) Standards

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Id. (alteration added) (quoting Twombly, 550 U.S. at 555).  Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (citation omitted).  Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss."  Iqbal, 556 U.S. at 679 (citing

Twombly, 550 U.S. at 556). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678 (citing Twombly, 550 U.S. at 556).

When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. See Brooks v. Blue Cross & Blue Shield of Fla. Inc., 116 F.3d 1364, 1369 (11th Cir. 1997). The court may also consider the documents attached to the complaint. Carmichael v. Kellog, Brown & Root Svs., Inc., 572 F.3d 1271, 1279 (11th Cir. 2009). Evergreen's Complaint [DE 1] attaches a copy of the Verified Complaint in Admiralty filed by the lender, M&T Bank, in the Southern District of Florida, Case No. 15-61488-CIV-BLOOM [DE 1-4]. The undersigned has relied upon the factual allegations contained in this attachment, as well as the allegations in Evergreen's Complaint.

B.    Failure To Timely Present an Administrative Claim

"Under the Federal Tort Claims Act ["FTCA"], 28 U.S.C. § 2401(b), a tort claim against the United States is barred unless it is presented in writing to the appropriate federal agency 'within two years after such claim accrues.'" United States v. Kubrick, 444 U.S. 111, 113 (1979) (footnote omitted). "The 2 year limitation period is a jurisdictional requisite to suit and is strictly construed." Magruder v. Smithsonian Inst., 758 F.2d 591, 593 (11th Cir. 1985). The purpose of this limitations period "is to require reasonably diligent presentation of tort claims against the Government." Kubrick, 444 U.S. at 117. The court is "not free to construe it so as to defeat its obvious purpose, which is to encourage the prompt presentation of claims." Id.

4

The timeliness of Evergreen's administrative claim turns on when its negligence claim accrued.  Defendant submits three alternative accrual dates: (1) March 30, 2012 – the date Evergreen purchased the boat encumbered by the lien [DE 7, p. 6]; (2) March 30, 2015 – the date the boat was seized on behalf of the lien holder [DE 7, p. 7]; or (3) the date on which Evergreen learned of the mortgage lien's existence, which was necessarily sometime prior to April 29, 2015 [DE 21, p.2].  Evergreen counters that the claim accrued either on October 31, 2017, when a Bahamian court declared the undisclosed mortgage lien to be valid [DE 15, pp. 6-7], or on April 29, 2015, when the Coast Guard advised Evergreen that it had failed to scan and upload the lien and that the lien was, in fact, valid [DE 15, p. 9].

Under the FTCA, a claim accrues at the time of injury.  Diaz v. United States, 165 F.3d 1337, 1339 (11th Cir. 1999).   In some instances, the time of injury and the involvement of the government may be readily apparent, such as a collision with a postal vehicle.   In other instances, such as in a medical malpractice action, the causal link between the "injury" and the government action may not be readily apparent; in those instances,  "discovery of the injury and its cause . . . marks the date the limitations period starts running."  White v. Mercury Marine, Divisin of Brunswick, Ga., 129 F.3d 1428, 1433 (11th Cir. 1997) (citing Kubrick, 444 U.S. at 113).  Thus, under the FTCA, a  claim accrues when the plaintiff has knowledge of both the injury and its cause, such that "[k]nowledge of the injury and its cause should stimulate inquiry, and the victim of the injury has two years to discover enough facts on which to base a claim."  Jones v. U.S., 294 Fed. Appx. 476, 479 (11th Cir. 2008).  See also Erick v. Border Patrol of Fla. State, 154 Fed. Appx. 193, 195 (11th Cir. 2005) ("[A] claim under the FTCA accrues when the plaintiff has

knowledge of its injury and its cause."). However, "the plaintiff need not know that she has a legally cognizable claim for the claim to accrue, and may not bury her head in the sand once she is put on notice that the government may have caused an injury." <u>Diaz</u>, 165 F.3d at 1339.

Here, the Government argues that the injury occurred at the time of purchase: Evergreen paid for, but did not receive, a vessel with an unencumbered title. The undersigned disagrees. Indeed, according to the exhibits attached to Evergreen's Complaint [DE 1-4], the seller of the vessel actually continued to make payments on the mortgage for several years after the sale. Had the seller continued to pay the entire mortgage in full, Evergreen would never have learned of the mortgage and would not have sustained any compensable injury. In the scenario proposed by the Government, the limitations period would have started to run before Evergreen had any notice that something was amiss with the vessel's title, let alone that the Coast Guard was at fault. This position is not consistent with FTCA case law.

The Government alternatively argues that the injury accrued in March 2015 when the bank asserted self-help and took possession of the vessel, or when Evergreen re-inquired about the status of the vessel's title. Again, the undersigned disagrees. At that point, all Evergreen had notice of was a claim of a lien on the vessel; Evergreen did not have notice that the lien was valid or that the Abstract of Title obtained from the Coast Guard was incorrect.

The cases cited by the Government are unpersuasive. Indeed, <u>Magruder v. Smithsonian Inst.</u>, 758 F.2d 591 (11th Cir. 1985), actually supports Evergreen's position. There, a family heirloom (known as the "Washington cradle") that belonged to a minor,

Peyton Magruder, had been given by Magruder's father to the Smithsonian Institute in June 1932. Magruder had been told by his family that the cradle was "on loan" with the Smithsonian. In June 1974, after his father died, Magruder found a 1932 letter from the Smithsonian thanking his father for the gift of the cradle. Magruder wrote to the Smithsonian on June 3, 1974, explaining that his father had no authority to make the gift and asking for the cradle to be returned. The Smithsonian refused to return the cradle but offered to consider any supporting documentation of Magruder's claim. Magruder made a formal demand for return of the cradle in 1979, which was refused, and filed an administrative claim in 1981. The executor of his estate filed suit to compel return of the cradle. Ruling that the 1981 administrative claim was untimely, the court noted that it was "thus clear that as early as June 1974 Peyton was aware of his father's actions and the necessity for him to proceed accordingly." Id. at 593. Significantly, in June 1974, Magruder was aware that the Smithsonian was claiming that the cradle was a gift, not a loan. Thus, by June 1974, Magruder had knowledge of both the injury and the causal connection to the government. His claim, therefore, had accrued and the two-year limitations period had begun. Id.

In this case, until it received the Coast Guard's April 29, 2015 letter, Evergreen had no reason to believe that the Abstract of Title it obtained from the Coast Guard was incorrect. Although Evergreen concedes that it was made aware of a potential mortgage on the vessel prior to receiving the Coast Guard's April 29, 2015 letter [DE 1, ¶ 14], – indeed, the vessel was siezed on March 30, 2015 – Evergreen reasonably believed that the existing mortgage claim was unverified and unenforceable [DE 1, ¶¶ 14-16], as preferred mortgage liens publicly available and successfully recorded by the Coast Guard

are presumed to be valid. See Westinghouse Credit Corp. V. O/S Dorothy Claire On, 732 F. Supp. 59, 61 (E.D. Tex. Dec. 21, 1989). Evergreen, therefore, reasonably did not believe that the claimed lien was valid or that the Coast Guard was responsible for not including it in the vessel's Abstract of Title, until it received the Coast Guard's April 29, 2015 letter.

In further support of its argument that the injury accrued in March 2015 when the bank asserted self-help, the Government cites Auger v. United States, 382 Fed. Appx. 901, 902 (11th Cir. 2010). In Auger, an individual who was rightly a citizen by birth had been denied a passport. Although the plaintiff's grandmother was a United States citizen, her mother was incorrectly denied a passport because she was born overseas. The plaintiff's multiple requests for a U.S. passport were denied by the State Department and, in fact, the plaintiff had on one occasion been deported from the United States. The court concluded that plaintiff's persistent requests for a passport, and the Government's repeated denials, apprised her of both her injury and its cause, and thus held that her administrative claim was filed beyond the two-year limitations period. Id. at 903. By contrast, in the present case, the inadvertent omission of the lien from the Abstract of Title was known only to the Coast Guard, not to Evergreen. Upon learning of a claim of lien upon its vessel's title on March 30, 2015, or shortly before, Evergreen was reasonably required to – and, in fact, did – inquire again of the Coast Guard whether such a lien existed. Because there were no other sources from which Evergreen could have reasonably ascertained whether a lien encumbered its vessel's title, or whether the Coast Guard failed to disclose the encumbrance, Evergreen displayed reasonable diligence in contacting the Coast Guard and ultimately receiving the April 29, 2015 letter.

8

Under these facts, the undersigned finds that either Evergreen's injury, or the Coast Guard's causal link to it, or both, were obscure and that Evergreen could not possibly have known of at least one, if not both,  of them until April 29, 2015.  On that day, Evergreen learned three material things, to wit: (a) that it had actually suffered title encumbrance; (b) that the Coast Guard was the cause of the inaccurate character of the vessel's title abstract; and (c) that the Coast Guard was negligent in transferring the lien to the electronic database.  Because Evergreen received notice of both its injury and its cause[1] on April 29, 2015, its claim accrued on that date and it had until April 29, 2017 to timely present its administrative claim.  And because the Coast Guard received Evergreen's administrative claim on April 28, 2017, within two years from April 29, 2015, the undersigned concludes that it was timely filed.

### C.   Failure to State a Claim Upon Which Relief Can Be Granted

The Complaint purports to state a claim for "negligence" by the Coast Guard in failing to properly record or disclose a prior ship's mortgage [DE 1, ¶¶ 24-32].  According to the Complaint, the Coast Guard manually recorded the prior mortgage but did not include the mortgage on its electronic database when it switched from a manual to an electronic system, thus causing the Abstract of Title issued to Evergreen to incorrectly omit the prior mortgage. The Government argues that the claim is essentially one of negligent misrepresentation, falling within the misrepresentation exception to the FTCA, 28 U.S.C.

---

[1]  Evergreen learned of the Coast Guard's negligence at the same time it learned of the injury and its cause.  Thus, the Court's analysis in Kubrick, 444 U.S. 111, -- that accrual of a claim is not based upon a plaintiff's awareness that the injury was negligently inflicted -- does not apply in this case.

§ 2680(h).  The Government, therefore, moves to dismiss the Complaint with prejudice for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).

In the FTCA, the United States waived sovereign immunity for "claims for money damages . . . for injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. 1346(b).  However, the FTCA has not waived sovereign immunity for "[a]ny claim arising out of . . . libel, slander, misrepresentation, deceit, or interference with contract rights."  28 U.S.C. § 2680(h).

The misrepresentation exception found in 28 U.S.C. § 2680(h) deprives courts of jurisdiction over tort claims against the United States based on plaintiffs' reliance on governmental misinformation or failure to communicate correct information.  United States v. Neustadt, 366 U.S. 696, 705-07 (1961); Block v. Neal, 460 U.S. 289, 297 (1983).  In excluding claims "arising out of" a misrepresentation from the FTCA, Congress intended to bar all claims for injuries that are "dependent upon" the tort of misrepresentation.  Zelaya v. United States, 781 F.3d 1315, 1333 (11th Cir. 2015).  A claim will be deemed to have arisen from a misrepresentation, "[i]f the Governmental conduct that is essential to the plaintiff's cause of action is encompassed by that tort," even if the plaintiff has labeled its claim as a different tort.  Id.  Accordingly, the court must

> examine [the] . . . claim to determine if the latter is based on the communication or miscommunication of information upon which others might be expected to rely in economic matters. If it does, and if a flawed communication caused the . . . injury, then [the] claim will be construed as a misrepresentation claim

> for which the analogous exception under § 2680(h) applies, and sovereign immunity will therefore bar the claim.

Id. at 1334.  Courts must construe exceptions to the FTCA strictly and in favor of the United States.  JBP Acquisitions, LP v. United States ex rel. FDIC, 224 F.3d 1260, 1263–64 (11th Cir. 2000).  In making this determination, the court must "look beyond the literal meaning of the language to ascertain the real cause of complaint."  Hall v. United States, 274 F.2d 69, 71 (10th Cir. 1959) (case sounding in negligence barred under the FTCA misrepresentation exclusion where plaintiff's damages were caused by Government agent's mistaken report that his cattle were diseased).

The Government argues, and the undersigned agrees, that Evergreen's negligence claim arises out of a misrepresentation.  The essence of Evergreen's claim is that the Coast Guard provided an incorrect Abstract of Title for the vessel, such that it omitted a previously recorded ship's mortgage that was eventually paid by Evergreen after the vessel's seller defaulted.  These facts are quite similar to those before the Court in United States v. Neustadt, 366 U.S. 696 (1961).  There, the Federal Housing Administration ("FHA") inspected property for sale to determine whether it was eligible for FHA mortgage insurance, and it assigned an appraisal value for the property to establish the maximum amount of mortgage insurance available.  Shortly after the borrowers moved into the house, the ceilings and walls of the house developed substantial cracks.  A subsequent investigation revealed that the subsoil under the house was composed of a type of clay that retained moisture and that poor drainage conditions on the property caused water to seep into the clay, causing it to shift the foundation of the house and to produce the cracks.  Id. at 700.  The borrowers sued the Government, alleging that the FHA's inspection and

appraisal of the property had been conducted negligently, and if the inspection and appraisal had been correctly performed, the borrowers would not have purchased the property for the amount they had paid.

The trial court and intermediate appellate court rejected the Government's reliance on the § 2680(h) misrepresentation exception, but the Supreme Court reversed. The lower courts had held that § 2680(h) did not bar the claim because "the misrepresentation was 'merely incidental' to the 'gravamen' of the claim, i.e., 'the careless making of an excessive appraisal'. . . ." Id. at 704. Because the National Housing Act imposed a duty on the FHA to deliver an appraisal to prospective home purchases, the lower courts reasoned that the FHA owed a "specific duty" and that the negligent breach of that duty entitled the borrowers to recover in tort for negligence. Id. at 705. The Supreme Court disagreed, holding that nothing in the National Housing Act evidenced a congressional intent "to limit or suspend the application of the 'misrepresentation' exception of the Tort Claims Act." Id. at 708. In language that is applicable to the present case, the Supreme Court articulated the scope of governmental immunity:

> The compulsory disclosure provision of s 226 is but one of numerous instances in which Congress has relegated to a Governmental agency the duty either to disclose directly, or to require private persons to disclose, information for the assistance and guidance of other persons in the conduct of their economic and commercial affairs. In practically all such instances, it may be said that the Government owes a 'specific duty' to obtain and communicate information carefully, less the intended recipient be misled to his financial harm. While we do not condone carelessness by Government employees in gathering and promulgating such information, neither can we justifiably ignore the plain words Congress has used in limiting the scope of the Government's tort liability.

Id. at 710-11 (footnote omitted).  Thus, even if the government employee's actions in compiling and preparing information were negligent, the misrepresentation exception to the FTCA bars suits for damages incurred in relying on such incorrect information.

Here, Evergreen alleges that in reliance on the Coast Guard's title abstract system -- which did not show any preexisting lien – it purchased a vessel and subsequently suffered damages caused by the Coast Guard's failure to properly include the prior lien on the vessel's Abstract of Title [DE 1, ¶¶ 16, 18].  The Coast Guard's maintenance of the vessel's Abstract of Title essentially amounted to an exchange of information between the Coast Guard and Evergreen on which Evergreen relied to its detriment in the course of the purchase.  This constitutes a misrepresentation under the FTCA.  See, Neustadt, 366 U.S. at 706 (defining misrepresentation as a "[f]ailure to use due care in obtaining and communicating information upon which that party may reasonably be expected to rely in the conduct of his economic affairs").

Evergreen argues that the FTCA's misrepresentation exception does not apply because its negligence claim is also based upon the Coast Guard's alleged violation of 46 U.S.C. § 56101(a)(1)(B) and the accompanying regulations, 46 C.F.R. §§ 67.11 and 221.15, which prohibit approval of the foreign registration of U.S.-documented vessels subject to recorded liens or encumbrances [DE 15, p. 11-12].  See Block v. Neal, 460 U.S. 289, 298 (1983) (misrepresentation exception will not bar a claim based on separate statutory duty).  Evergreen bases this argument on the fact that sometime after it purchased the vessel, it transferred the vessel's registration to a foreign country [DE 1-4, ¶ 25].  Yet, Evergreen fails to proffer any state law duty analogous to the United States' maintenance of its vessel registry or its restrictions on foreign transfers of vessels that

13

would subject the United States to tort liability under the FTCA by allowing Evergreen to delete and re-register the vessel in a foreign country.   Furthermore, the statutes and regulations cited by Evergreen do not suggest a duty to Evergreen to prevent it from completing a foreign registration of the vessel; if anything, such a duty would be owed to the lien holder.   Moreover, as Defendant points out, the change of registration occurred after Evergreen's purchase of the vessel and did not itself cause Evergreen's injuries.

Evergreen's reliance upon <u>Block</u>, 460 U.S. 289, is  unavailing.   In <u>Block</u>, the Farmer's Home Administration ("FmHA'") had undertaken to supervise and periodically inspect the construction of a borrower's future home.   Periodic inspection reports prepared by the FmHA contained no adverse comments on the construction.   However, after the borrower moved into the home, it was determined that the home's heat pump was either defective or undersized.   In addition, post-sale inspections revealed numerous defects in material and workmanship.   <u>Id.</u> at 292.

The borrower sued the FmHA for damages. Both the court of appeals and the Supreme Court rejected the Government's argument that the misrepresentation exception to the FTCA barred the claim.   The Court distinguished <u>Neustadt</u> and noted that "Neustadt alleged no injury that he would have suffered independently of his reliance on the erroneous appraisal.   Because the alleged conduct that was the basis of his negligence claim was in essence a negligent misrepresentation, Neustadt's action was barred under the 'misrepresentation exception." <u>Block</u>, 460 U.S. at 297.   The Court in <u>Block</u> proceed to explain that "unlike <u>Neustadt</u>, the government's misstatements are not essential to plaintiff's negligence claim."   <u>Id.</u>   Because the FmHA officials voluntarily undertook to supervise the construction of the plaintiff's house, the FmHA had a "duty to use due care

14

to ensure that the builder adhere[d] to previously approved plans and cure all defects before completing construction" and that this duty was "distinct from any duty to use due care in communicating information to respondent." Id.

Unlike the claims in Block, Evergreen's claims are based solely on the Coast Guard's (mis)representations in the Abstract of Title.  Although the Coast Guard's admitted that its negligence had caused the error in the Abstract of Title, the gravamen of Evergreen's Complaint is that the Coast Guard misrepresented the (non-)existence of a lien.  Additionally, unlike in Block, the Government undertook no voluntary duty for the benefit of Evergreen.  The undersigned concludes, therefore, that the principles articulated in Neustadt govern this issue, and that Evergreen's claims are barred by the misrepresentation exception to the FTCA.  For these reasons, the undersigned recommends that the Government's Motion to Dismiss [DE 15] be granted.

III.    EVERGREEN'S MOTION TO AMEND COMPLAINT

Evergreen filed a Motion to Amend Complaint as a Matter of Court Per Rule 15(a)(1)(B) [DE 19].  Because  Evergreen submitted its proposed Amended Complaint more than 21 days after the Government filed its Motion to Dismiss, either consent of the defendant or leave of court is required.  See Fed. R. Civ. P. 15(a)(1)(B) and 15(a)(2).  The Government opposes the proposed amendment.  The court, however, must liberally grant leave to amend a complaint, unless the proposed amendment is futile.  Dyer v. Wal-Mart Stores, Inc., 535 Fed. Appx. 839, 842 (11th Cir. 2013).  "Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant."  Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007).

15

Evergreen's proposed Amended Complaint [DE 19-1] alleges (1) that the Coast Guard failed to use reasonable care in entering the prior lien on the vessel into its electronic file system and (2) that the Coast Guard violated its statutory and regulatory duties under 46 C.F.R. § 221.15 and 46 U.S.C. § 56101(a)(1)(B) not to permit foreign transfer of a formerly U.S. documented vessel if there are liens or encumbrances recorded against the vessel.  However, these theories cannot extricate Evergreen's claims from the FTCA's misrepresentation exception.

The gravamen of Evergreen's Amended Complaint, and its claim for damages, is that it suffered financial harm as a result of the Coast Guard's failure to include the prior lien in the vessel's Abstract of Title.   The claim is entirely dependent upon the allegation that the Coast Guard provided incorrect information.  Whether the Coast Guard negligently implemented an electronic storage system does not change that analysis.   "[A] plaintiff cannot circumvent the misrepresentation exception simply through the artful pleading of its claims."  JBP Acquisitions, LP v. United States, 224 F.3d 1260, 1264 (11th Cir. 2000). The essence of Evergreen's claims is predicated upon the information relayed (or, more accurately, not relayed) by the Coast Guard.  Thus, Count I of the Amended Complaint would not state a claim under the FTCA.  Additionally, for the reasons set forth in the above analysis (supra at 13), Evergreen would not be able to state a claim (Count II of the Amended Complaint) based upon the transfer of the vessel's title to a foreign country. Thus, Count II of the Amended Complaint is not sustainable.   For these reasons, the undersigned recommends that Evergreen's Motion to Amend Complaint [DE 19] be denied as futile.

IV.     CONCLUSION

16

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that (1) Defendant's Motion to Dismiss be **GRANTED**; (2) Evergreen's Motion to Amend Complaint [DE 19] be **DENIED**; and (3) this cause be **DISMISSED WITH PREJUDICE**.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge.  Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice.  See 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140, 149 (1985); Henley v. Johnson, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1 (2016).

**DONE AND SUBMITTED** in Chambers, Fort Lauderdale, Florida, this 3rd day of January 2019.

BARRY S. SELTZER
United States Magistrate Judge

Copies furnished via CM/ECF to:

Hon. Federico A. Moreno
Counsel of record via CM/ECF